Faye WRIGHT, et al., Plaintiffs,

v.

Avery PHIPPS, et al., Defendants.

Civ. A. No. 88–0059–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Feb. 5, 1990.

---

Thomas C. Antenucci and Nancyjean Bradford, Abingdon, Va., for plaintiffs.

John M. Farmer, Norton, Va., and Terry G. Kilgore, Gate City, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

The plaintiffs, former employees of either the Sheriff's Department, or Commissioner of the Revenue, or the Board of Supervisors of Dickenson County, Virginia, brought this action under 42 U.S.C. §§ 1983 and 1988, claiming that they were discharged from their County jobs for political reasons, and seeking both temporary and permanent injunctions returning them to their jobs, plus compensatory and punitive damages, and attorney's fees.

The case is now before the court on cross motions for summary judgment filed by all of the plaintiffs and all defendants. The evidence consists of depositions admitted into evidence, numerous documents and exhibits and several days of testimony taken before the court. This case was consolidated with *Hicks v. Phipps*, 765 F.Supp. 1541 (W.D.Va.1990), for discovery and trial

by Order entered on September 30, 1988. Since none of the plaintiffs in this case are involved in Civil Action No. 88–0058–B, this case is now unconsolidated for purposes of the present motions; however, the court will consider all evidence presented in the consolidated cases.

Plaintiffs Johnson and Sutherland were dismissed from this suit on May 31, 1988; defendants Paul Moore and Henry Vanover, in their individual and official capacities, were dismissed by Order of September 30, 1988.

This case has been briefed and is now ripe for decision. The court has also heard this evidence on a motion for a preliminary injunction; however, final judgment being entered on the merits, there is no necessity to rule on said motion for a preliminary injunction.

Upon a motion for summary judgment, the moving party is entitled to judgment as a matter of law where the non-moving party has failed to make a sufficient showing of an essential element of his case on which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not sufficient to deny summary judgment merely because of the existence of some factual dispute; there must be "no genuine issue of material fact." *Anderson*, 477 U.S. at 247–8, 106 S.Ct. at 2510.

It is well established that a public employee cannot be fired solely because of the employee's political affiliation. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Elrod*, there was no dispute that all of the employees of a former sheriff were not rehired by a new sheriff solely for political reasons in order to effect a general housecleaning for patronage purposes. In the instant case, political motives are denied and evidence has

been presented to show other grounds for failure to rehire.

■ In all First Amendment firing cases where mixed motives are involved, and the employee alleges that a political motive gave rise to the dismissal, the employee has the burden of proof to show that his political activity was the motivating or "but for" factor in the decision to fire. If this burden is met, the burden is on the employer to show that an unrelated motive prompted the discharge, and that this unrelated motive was an independently effective motive. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). *See also Johnson v. Butler,* 433 F.Supp. 531 (W.D.Va.1977). The test of a sufficiency of the evidence in mixed motive cases requires the inference that the dismissal was politically motivated must be supported by a "reasonable probability." *Jones v. Dodson,* 727 F.2d 1329, 1339 (4th Cir.1984). In mixed motive cases, a lack of widespread patronage dismissals weighs heavily against any inference of a politically motivated discharge.

■ This court has held that deputies of a sheriff in Virginia are employees at will and have no due process rights. *Whited v. Fields,* 581 F.Supp. 1444, 1454 (W.D.Va. 1984). In Dickenson County, Virginia, however, a grievance procedure had been adopted permitting any of the plaintiffs to file a grievance and have an administrative hearing pertaining to the legality of his firing. See Va.Code Ann. § 2.1–114.5:1 (1987). However, since none of the plaintiffs filed such a grievance and no due process claim is made, all the plaintiffs in this case will be considered as employees-at-will. In First Amendment cases, it is not necessary to exhaust administrative remedies before filing suit. However, a failure to pursue administrative remedies clearly available to the plaintiffs is an item of evidence to be considered along with other evidence in the case.

## BACKGROUND FACTS

Politically speaking, Dickenson County, Virginia is an anachronism, a throwback to an age when politics consisted of precinct organization, door-to-door campaigning, and strong two-party competition. It is not at home in today's media-conducted campaigns, where grass roots organizations do not matter and candidates appear in a community only to conduct a media event. Dickenson County still has a majority allegiance to Democrat candidates for Governor, President, and Congress but has a remarkable independence in County elections. For example, it appears that the majority control of the governing Board of Supervisors shifts from Republicans to Democrats and back again almost every four years. Going into the 1987 election, Democrats controlled the Board of Supervisors by a 3 to 2 majority and held the constitutional offices of Sheriff, Commonwealth's Attorney and Commissioner of the Revenue. Republicans held the offices of Treasurer and Clerk.

As 1987 unfolded, almost any unbiased observer could have seen that the Democrats had sown the seeds of political disaster. In 1986, the Board of Supervisors had raised taxes substantially. (According to some testimony, they had nearly doubled real estate taxes). The incumbent Sheriff, who had held office for two terms, had tragically fallen victim to the disease of alcoholism and was away from his office much of the time. With no one in charge, the office fell into disarray. Some of the deputies were abusers of alcohol themselves, others failed to do their jobs due to lack of supervision, and most important, the department became involved in political bickering over the Democrat nominating process in which the Sheriff's brother, Edward C. Fleming, sought to succeed him and was opposed by the subsequent nominee, Kemper Damron. Once nominated, Damron ran on a platform of cleaning house by firing all incumbent deputies. This in turn caused the incumbent Sheriff to pick up his fallen banner and run a write-in campaign, thereby dooming the candidacies of both Damron and himself.

As if the Sheriff's race were not divisive enough, another feud was going on within the party.

**1548**

William A. Patton, a tall, handsome, clean-cut, erect and charismatic individual, seasoned by many campaigns, a party worker and candidate, a labor leader with the United Mine Workers of America, a former Chairman of the Democrat Party of Dickenson County, a former Chairman of the Board of Supervisors, a sixteen-year member of the Board of Supervisors, former Chairman of the Cumberland Plateau Planning Commission, former Chairman of the Public Service Authority, member of the Social Service Board, member of the Breaks Park Commission, delegate to numerous National Democrat Conventions, a friend of Presidents, Governors, Senators and Congressmen, who have spent the night and broken bread with him, was summoned in 1985 or 1986 to appear before the County Democratic Committee and explain why he was "voting against Democrats." Patton resigned from the Committee.

At this time, Patton was locked in a feud with Jim Hawkins, Chairman of the Democrat party and assistant County Administrator, and Gerald Gray, Commonwealth's Attorney. Gray is a relative newcomer to Dickenson County having been elected to office in 1983, and re-elected in 1987, and is one of the few Democrats to survive.

The conflict between Patton and Gray arose because Patton wanted to abolish the job of County Attorney and also objected to tearing a wall down in the courthouse to expand Gray's office. According to Patton, Gray was County Attorney, Welfare Board Attorney, School Board Attorney, as well as Commonwealth's Attorney. Also, a dispute arose over the position of appointed tie-breaker, a position held by an individual reading law in Gray's law office.

Causing additional turmoil in the County was the criminal investigation of Patton wherein he was accused of misuse of County funds. Patton was eventually cleared of any wrongdoing and a public announcement was made of this fact by a special prosecutor. However, the special prosecutor did indict and convict another Democrat member of the Board of Supervisors, Jim Mullins, for misuse of County funds. Mr. Mullins resigned as a result of this convic-

tion and thus a vacancy existed at election time in November 1987. Thus, at the first meeting of the "old Board" of Supervisors after the election on November 11, 1987, the Board consisted of two Democrats, two Republicans and one vacancy.

The official minutes of this meeting of November 11, 1987 (Defendants' Exhibit 2) show that by a vote of 4–0, Carroll Dean Rasnick was terminated because he had never been legally hired. In other evidence on this issue, it appears that Mr. Mullins and Mr. Harrison, before the election, promised Mr. Rasnick a job and Jim Hawkins, County Administrative Assistant, put him on the payroll without consulting the other three members of the Board.

At this same meeting, Hank Viers was terminated. The motion was made by Burl Shortt who gave as his reason a reduction of the work force. Mr. Harrison objected because Mr. Viers had seniority over one other employee. Mr. Hawkins stated that Viers was senior to a woman employee who was needed to care for the ladies' bathroom. Mr. Patton stated there were too many employees; that it was cleaner when only one person did it. The vote was 3 to 1 to discharge Mr. Viers.

## CARROLL DEAN RASNICK AND HANK VIERS

■ The termination of Rasnick on November 11, 1987 is a misnomer. He was not fired because he had never been hired. There can be no political firing under the *Elrod* and *Branti* doctrine where there was no job to begin with. Dickenson County was $1.5 million in debt and had raised taxes at the time of the election in 1987. Three people had been hired as janitors in the courthouse, a job normally done by one person. Yet, Rasnick was put on the payroll just before the election by the County Administrator without the vote or knowledge of a majority of the Supervisors. Clearly, this was an election eve creation of a job to obtain votes, a totally illegal act.

■ In the case of Viers, the minutes of the November 11 meeting show that he was terminated as a result of a reduction in force. Mr. Shortt made the motion that

Viers be cut because three people were doing one person's job. Mr. Harrison, who cast the lone dissenting vote, raised a question as to seniority, but raised no objection to reducing the work force. Mr. Hawkins gave as his reason for selecting Viers instead of Mullins that a woman should be kept on. There is no evidence that this Board ever hired anyone in Viers' place. Thus, there is no evidence at all of a political firing for patronage purposes in Viers' case, applying the test set forth in *Elrod*.

It is argued on behalf of Viers that Patton caused him to be fired due to political animosity. Patton did go to Viers twice to complain to him about lax working habits and lack of cleanliness in the court house. On one occasion, he took Mr. Shortt with him to talk to Viers. Viers also argues that no written notices were given to him, and says he worked against Patton being nominated. However, Viers did not live and vote in the district served by Patton and there is no actual evidence that Patton or any other supervisor committed a political firing. If Viers' firing was improper because of seniority or failure to give him notice in writing, then he had a remedy by using the grievance procedure. This court does not rule that Viers was legally fired, but simply that there is insufficient evidence of a political patronage firing.

## FAYE WRIGHT

■ Faye Wright was hired by the old Democrat-controlled Board of Supervisors. She is the wife of the Democrat candidate for Commissioner of the Revenue, who was defeated in the 1987 election. Bill Patton testified that he was responsible for Mrs. Wright's being hired. This evidence is not disputed. Patton described her job performance as "very poor" that she withheld his mail and failed to notify him of Board meetings. Burl Shortt, a Republican, was the only member of the 1983–87 Board to be re-elected. He was aware of Mrs. Wright's job performance. Patton and Shortt became aware, as did other "old"

Board members, that Mrs. Wright could not take shorthand and her typing skills were poor. Thus, a member of the Circuit Court Clerk's staff performed her duties of taking and transcribing minutes of the Board meetings. Also, as a part of Mrs. Wright's duties, she was required to keep the books of the County Administrative Assistant. These books were improperly kept and could not be balanced. The Clerk's Office had to recode all expenditures before they could be paid.

Mrs. Wright was hired for the term of office of the Board. The court finds that she would be subject to the County's grievance procedure (See Court Exhibits[1]). When she was not rehired, she filed no grievance. Henry Vanover was made Administrative Assistant by the "old" Board and observed Mrs. Wright's job performance for two months. She did not make application to retain her job, nor did she discuss it with Vanover. The secretary traditionally served at the will and pleasure of the Board. Vanover took no part in the firing or failure to rehire Mrs. Wright; however, he found her typing skills "slow," shorthand skills "none" and filing skills "poor."

When asked whether she had any evidence that her firing was politically motivated, Mrs. Wright responded: "Rumors."

While there is no direct evidence that Mrs. Wright's firing was political, there is circumstantial evidence due to the large number of firings to create an inference of political motivation. Mrs. Wright is a Democrat and was replaced by a Republican. The court considers Mrs. Wright's case to be a mixed motive case to be decided under the principles of *Mt. Healthy School Dist. v. Doyle*. The court does not find that Mrs. Wright has proven by a preponderance of the evidence that the political motive was the "but for" factor in her firing. Undisputed evidence shows that she lacked the skills for her job. It is difficult to tolerate a secretary who is a poor typist, has no shorthand skills and is a poor book-

---

1. The grievance procedure was amended December 21, 1987 to exclude the Department of Social Services and the constitutional offices.

keeper. The Board of Supervisors, as individuals and officials, has borne the burden of showing that the unrelated motive was an independently effective motive.

### LARRY E. DEEL

■ Larry Deel was hired as a deputy sheriff when Sheriff Fleming first took office in 1976. Deel admits he is an alcoholic. His alcoholism appears to have become a severe mental and physical problem in the last two years before the election of 1987. Deel admits he was reprimanded for drinking on the job by the Chief Deputy in 1986. He attended a detoxification center in March 1987, but admits to one serious drinking spell since that time. He drinks bourbon and moonshine. He admits to carrying moonshine liquor in the sheriff's car while on duty. He knew this violated the law. He claims the moonshine was given to him by a friend he declines to name. He admits to being drunk while on duty at a Moose Lodge in Haysi, Virginia, and at other times. The public knew of these violations of the law. Sheriff Phipps, prior to hiring deputies, had seen Deel drunk on one occasion at a football game and knew of his reputation for drinking. While running for office, Sheriff Phipps found that the people "demanded," and he promised, that "sober people" would be appointed as his deputies. Sheriff Phipps has testified that his only reason for not rehiring Larry Deel was that he did not meet his standard of sobriety. The court finds from undisputed testimony that Sheriff Phipps has met his burden of showing that the unrelated motive was an independently effective motive under the *Mt. Healthy* test. In a rural county such as Dickenson County where people know their deputies on a personal basis, sobriety is a necessity for a person to be an effective police officer, no matter what his political affiliation.

### K.B. BAKER

■ K.B. Baker was Chief Jailer under Sheriff Fleming, a high profile position in view of the public perception of Sheriff Fleming's staff tolerating misconduct in the jail and the consumption of alcoholic beverages. Baker admitted in his testimony that he had been involved in an automobile accident in Pound, Virginia in either 1985 or 1987, after he had had three or four shots of Canadian Mist Whiskey, a well-publicized event known to Sheriff-elect Phipps. Also, while Sheriff–Elect Phipps had been Town Policeman in 1979, evidence he had placed in the hands of K.B. Baker for custody and safekeeping disappeared and was not available for trial. In view of these specific acts, Sheriff–Elect Phipps says that he did not feel K.B. Baker was reliable and therefore, did not rehire him. There is no direct, positive evidence that K.B. Baker was not rehired for political reasons.

Sheriff-elect Phipps also testified he could not have rehired the jailer because of his misconduct in the last days of the Fleming administration. K.B. Baker as Chief Jailer was responsible for the records of the Sheriff's Department. All these records disappeared and were not turned over to the new sheriff. K.B. Baker testified that he boxed these records up and turned them over to Sheriff Fleming. This undisputed evidence shows that K.B. Baker's loyalty was to Sheriff Fleming and not to the office he held. While the incident occurred after a hiring decision had been made by the Sheriff-elect, it reinforces the truth of the Sheriff-elect's assessment of the quality of K.B. Baker's service to the County. The court, therefore, finds that the Sheriff has shown by undisputed facts an independently effective motive not to rehire K.B. Baker and there is a corresponding lack of political motive.

### JAMES SCOTT MOORE

■ It has been the custom in Dickenson County, Virginia to hire deputies to conduct law enforcement in particular areas of the County, usually the home areas of the deputy. Sheriff Fleming followed this practice and James Scott Moore was the deputy assigned to the Clinchco area of the County. As the defendant Phipps campaigned from house to house in the Clinchco area, he found that there was a de-

mand for a new deputy, that James Scott Moore was not doing his job. Phipps promised that, if elected, he would look into the matter. His testimony is that he made an assessment from complaints that Moore was not satisfying the people due to laxity of law enforcement. There is no evidence that Moore's politics was known by Phipps or that he was fired for political reasons. Moore has failed to carry his burden of proof and Sheriff Phipps has shown an independent reason for not rehiring Moore.

## CONCLUSION

Based on undisputed facts in this case, the court finds, as to each of the plaintiffs, that they have either failed to prove that political activity was the motivating or "but for" factor in the decision not to rehire, or on the other hand, the defendants have shown by a preponderance of the evidence that an unrelated motive prompted the decision not to rehire. Accordingly, the motions for summary judgment filed by the defendants are GRANTED and a final order will be entered.