Loretta C. CHRISTIAN, et al.

v.

CECIL COUNTY, MARYLAND, et al.

Civ. No. L–91–1933.

United States District Court,
D. Maryland.

March 29, 1993.

Morton A. Sacks, and Donald F. Burke, of Baltimore, MD, Michael D. Smigiel, Elkton, MD, for plaintiffs.

Charles S. Fax, and Kathy L. McCalip, Baltimore, MD, for defendants.

## MEMORANDUM

LEGG, District Judge.

In this § 1983 action, the Court is called upon to decide the motion to dismiss, or, in the alternative, for summary judgment, filed by the defendants. For the reasons set forth below, the Court will, by separate order, GRANT the motion IN PART, and DENY it IN PART.

## I. FACTS

Plaintiffs Loretta C. Christian, Lois F. Sutherland, and Ruth C. Carter are three former classified employees of the Commissioners' Office of Cecil County, Maryland. Christian, who was hired in 1979, was a secretary[1]; Sutherland, hired in 1984, was a secretary/receptionist[2]; and Carter, hired in 1984, was an accounting clerk. All three received written evaluations of their work throughout their careers as Cecil County employees which described their performance as satisfactory, commendable, and/or outstanding. As classified employees, plaintiffs could be terminated only for cause, lack of work, lack of funds, or changes in technology.[3]

Defendants W. Edwin Cole, Jr., A. Marie Cleek, and Grayson L. Abbot ("the commissioners") are Cecil County's three commissioners, who were elected into office on November 6, 1990. Defendant Robert Hill is the former Personnel Director of Cecil Coun-

ty, and defendant Edward Sealover is the Cecil County Administrator appointed by the commissioners.

Plaintiffs allege that the commissioners held a private meeting a day or two after they were elected, during which they decided to remove plaintiffs from their positions and replace them with employees whom Cleek and Cole knew personally. Plaintiffs further contend that the decision to remove them from their jobs was based on the commissioners' determination that they would be uncomfortable working with the plaintiffs for political reasons, as well as representations made by then-Personnel Director Robert Hill that plaintiffs' work performance was inadequate.

Plaintiffs allege that the commissioners initially intended to "swap" them for the county employees with whom the commissioners desired to work. Hill allegedly informed the commissioners that such a swap would not be possible. Hill then allegedly suggested that the commissioners could terminate the plaintiffs by voting to reorganize the commissioners' office.

The commissioners did so at a public meeting on December 4, 1990, the day on which they took office. In addition, the commissioners voted at the meeting to hire Linda Van Ormer and Gene Carr, the individuals with whom they had prior ties. The commissioners also voted on December 4 to declassify the positions of the employees who worked in the commissioners' office.

Plaintiffs subsequently filed an eighteen count complaint in this Court alleging (i) § 1983 counts against Cecil County for terminating them without due process (counts I, VII, and XIII); (ii) § 1983 counts against Cecil County for declassification of the positions in the Commissioners' Office (counts II, VIII, and XIV); (iii) § 1983 claims against the commissioners, as well as Hill and Ed-

---

1. Christian was originally hired as a Grants Clerk. In 1980, she was promoted to the position of Clerk Typist II, and in 1983 she was promoted to the position of Secretary. Complaint ¶ 10.

2. Sutherland was originally hired as a Clerk Typist I. In 1985, she was promoted to Clerk Typist II. In 1988, she was promoted to Account Clerk I, and in 1989, to Secretary/Receptionist. Complaint ¶ 12.

3. Cecil County Code § A277–15E(2).

ward Sealover[4] for declassifying their positions and terminating them without affording them due process (counts III, IX, and XV); (iv) § 1983 conspiracy claims against the five individual defendants (counts IV, X, and XVI); (v) intentional infliction of emotional distress claims against the individual defendants (counts V, XI, and XVII); and (vi) interference with contract claims against the individual defendants (counts VI, XII, and XVIII). The defendants have moved to dismiss the complaint, or in the alternative, for summary judgment. The plaintiffs have opposed the motion.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Because both parties have submitted evidentiary materials with their motions, the Court will treat the defendants' motions as motions for summary judgment. Fed. R.Civ.P. 12(b).[5] Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the moving parties can show that "there is no genuine issue of material fact" and that they are "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving parties bear the initial burden of proof, and the Court must determine whether, viewing the evidence in the light most favorable to the plaintiffs, "a fair-minded jury could return a verdict for the [plaintiffs]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the movants make this preliminary showing, the burden shifts to the opposing parties to delineate, with supporting admissible evidence, an issue of material fact. A "mere scintilla of evidence in support of the plaintiffs' position" shall not

suffice. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### B. SECTION 1983 CLAIMS

In counts I, II, III, VII, VIII, IX, XIII, XIV, and XV, plaintiffs allege § 1983 claims against Cecil County, the commissioners, Hill, and Sealover for (i) terminating plaintiffs without affording them due process and (ii) declassifying the positions in the Commissioners' office. It is well established that section 1983 is a "remedial statute which does not create substantive rights ... [but] provides a remedy for rights created [under the Constitution or laws of the United States]." *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir.1984).

In order to state a cause of action under § 1983, a plaintiff must allege (i) conduct by someone acting under color of state law[6] and (ii) a deprivation of rights secured by a federal statute or the Constitution. *Id.* Thus, plaintiffs must allege an underlying federal constitutional or statutory violation in order to state an actionable § 1983 claim.[7]

#### 1. *The Termination Claims*

The Court will first consider plaintiffs' contention that their termination without adequate notice or a predeprivation hearing violated the Due Process Clause of the Fourteenth Amendment.

##### a. Plaintiffs' Interest in Continued Employment

■■■ In order to state an underlying violation of the Due Process Clause of the 14th amendment, plaintiffs must have a constitutionally cognizable property interest in their continued employment with Cecil County.

---

4. The new County Administrator who ultimately fired the plaintiffs.

5. On December 4, 1992, the Court issued a memorandum to counsel directing them to submit, on or before December 18, 1992, any and all evidentiary materials that they deemed pertinent to a summary judgment motion.

6. The Court is satisfied that the commissioners and defendant Hill acted in their capacities as state actors during the alleged wrongdoing. When he met with the then commissioners-elect

in the fall of 1990, Hill acted in his capacity as Personnel Director of Cecil County. When the commissioners voted to terminate the plaintiffs, they did so in their capacity as county officials.

7. Because a § 1983 claim must be based upon an alleged violation of either the U.S. Constitution or federal law, *Day* at 1202, the court will DISMISS plaintiffs' § 1983 claims insofar as they rely on alleged violations of Maryland law or the Cecil County Code.

"A property interest in a benefit protected by the due process clause results from a 'legitimate claim of entitlement' created and defined by an independent source, such as [ ] state and federal law." *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir.1988) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

In this case, plaintiffs' "legitimate claim of entitlement" to their positions derives from the Cecil County Code, which provides that classified employees may be terminated only for "lack of work, lack of funds, change in technology or demotion." [8] Thus, the plaintiffs had a constitutionally protected interest in their positions, entitling them to due process protection when they were threatened with termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

There is one exception, however, to the general rule that tenured civil service employees are entitled to due process protection prior to termination. This exception involves situations in which a government employee is not terminated, but in which her job is eliminated because of legitimate governmental reorganization or budgetary cutbacks. In such cases, the employee's *position* is terminated for reasons having nothing to do with the employee's personal qualities or work performance.

In these cases, government employees "enjoy no comparable property interest in [ ] employment ... but only an abstract desire to retain the job and a unilateral expectation of keeping it in the face of enforced budget cuts." *Hartman v. City of Providence*, 636 F.Supp. 1395, 1416 (D.R.I.1986). It is both unnecessary and futile to provide due process protection to employees in such circumstances because a hearing concerning the employee's job performance "would not be relevant to the Defendants' decision to abolish [the] job." *Ryman v. Reichert*, 604 F.Supp. 467, 471 (S.D.Ohio 1985).

This exception to the general rule applies, however, only when the elimination of an employee's position is carried out in good faith and for legitimate budgetary or other reasons. When a governmental reorganization or cutback which eliminates civil service jobs is "a mere subterfuge to rid [the government] of a particular employee," the employee involved has been dismissed for individualized reasons and is entitled to full due process protection. *Ryman* at 468; *Hartman* at 1409.

In the case *sub judice*, plaintiffs allege, with supporting evidence, that (i) the elimination of their positions was based on their personal attributes, such as their alleged incompetence and loyalty to the former commissioners and (ii) the stated reasons for the elimination of their jobs are pretextual. Defendants reply that plaintiffs' jobs were eliminated pursuant to a good faith attempt on the part of the commissioners to restructure city government and cut expenses due to a substantial budget deficit in the County. As a result, this Court must inquire into the "bona fides" of the defendants' explanation of the bases for the plaintiffs' terminations in order to guard against a "devious attempt by 'government officials to cry "reorganization" in order to circumvent the constitutional and statutory protection guaranteed public employees.'" *Hartman* at 1417 (quoting *Misek v. City of Chicago*, 783 F.2d 98, 101 (7th Cir.1986)).

Based on a review of the record, the Court finds that plaintiffs have met their burden of producing sufficient evidence to create a genuine issue of fact as to whether they were terminated for personal reasons rather than due to a legitimate governmental reorganization. This evidence includes, but is not limited to, the following: (i) testimony from the former treasurer of Cecil County, Norman Hasson, that the commissioners did not consult him about the county's budgetary status prior to December 4, the date on which plaintiffs were terminated [9]; (ii) testimony by Hasson that the county had a twelve million dollar surplus at the time the commissioners assumed office [10]; (iii) evidence that the county's annual budget was already in place

---

8. Cecil County Code § A277–15E(2).

9. Declaration of Norman H. Hasson, Jr.

10. Hasson Decl. ¶ 4.

at the time of plaintiffs' terminations [11]; (iv) testimony from Commissioner Cleek that she met with the other commissioners-elect a day or two after the election to discuss "swapping" the plaintiffs for county employees with whom she and Cole had personal and political ties [12]; (v) testimony from Cleek that she sought to transfer the plaintiffs because "it would be more comfortable for me, and also more comfortable for them," and because "we wanted to have people that were going to be loyal to us" [13]; (vi) testimony from Cole that the commissioners sought employees who would be "loyal", and who had no "past connections with the prior administration" [14]; (vii) evidence that plaintiffs' job performance and qualifications were discussed at meetings between the commissioners and Hill [15]; (viii) evidence that the commissioners relied solely on Hill's advice in deciding that plaintiffs were not qualified to work for them [16]; (ix) testimony from the former commissioners for whom plaintiffs worked that they were satisfied with plaintiffs' job performance [17]; (x) positive written evaluations of plaintiffs' job performance [18]; and (xi) evidence that the two women hired to replace the plaintiffs were the only applicants for the newly-created positions and that plaintiffs were given no opportunity to apply for these jobs [19]. Thus, plaintiffs have demonstrated the existence of genuine disputes of material fact concerning the reasons behind their terminations and their right to due process protection prior to termination.[20]

11. Declaration of Norman H. Hasson, Jr.

12. Alva Marie Cleek Dep. at 19–21.

13. Cleek Dep. at 20, 28.

14. Cole Dep. at 42.

15. Cleek Dep. at 19–22; Cole Dep. at 101.

16. Cleek Dep. at 32–42; Cole Dep. at 101, 102.

17. Clifford Buckworth Dep. at 6; Merrit Burke Dean Dep. at 6, 9–17; Clair E. Carrick, Sr. Dep. at 7–19.

18. Plaintiffs' exhibits 2, 7, and 10.

19. Abbot Dep. at 88; Cleek Dep. at 96, 113.

### b. What Process Was Due?

■■■■ Defendants contend that plaintiffs' substantive allegations lack merit because plaintiffs were afforded due process with respect to their terminations. Defendants point to oral notice given plaintiffs by Hill on November 16, 1990, as well as letters which were mailed to the plaintiffs on December 4, 1990, which notified the plaintiffs of their terminations. In addition, defendants contend that a grievance procedure was available through which plaintiffs could have challenged their terminations. Only Ms. Christian attempted to utilize the grievance procedure, and she did not appeal the denial of her grievance claim.

Plaintiffs respond that, as classified public employees with a constitutionally protected interest in continued employment, they were entitled to adequate notice of the reasons for their termination as well as a pretermination hearing. The Court agrees. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), the Supreme Court made it clear that "the root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (emphasis in original). The Court found that the Constitution requires that government employees receive both reasonably adequate notice of the bases for their termination as well as "some kind of a hearing" prior to their discharge. *Id.*[21]

20. Although the plaintiffs do not address this issue in their pleadings, the alleged facts also reveal a potential First Amendment claim because the plaintiffs appear to have been terminated for political reasons. *See,* e.g., *Wright v. Phipps,* 765 F.Supp. 1544, 1546 (W.D.Va.1990).

21. Defendants cite *Fast v. School Dist. of City of Ladue,* 543 F.Supp. 785, 787 (E.D.Mo.1982), as support for their contention that, because plaintiffs were laid off rather than terminated, they were not entitled to an advance hearing. In this case, however, the commissioners voted to *terminate* the plaintiffs, eliminate their positions, and eliminate the classified status of employees in the commissioners office, thereby effectively terminating the plaintiffs.

Even assuming *arguendo* that plaintiffs were laid off rather than terminated, *Fast* is inconsistent with two circuit court opinions on this issue.

Moreover, the case *sub judice* is distinguishable from the *Parrat v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), line of precedent because the acts in question were not "random and unauthorized" but systematic and deliberate. As a result, it was both foreseeable and not unreasonably burdensome for the defendants to provide predeprivation procedure to the plaintiffs. "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of a postdeprivation ... remedy." *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 987, 108 L.Ed.2d 100 (1990). Thus, if a terminated employee is not given the opportunity to be heard prior to termination, "then even the furnishing of a prompt post-deprivation hearing does not satisfy the requirements of due process." *Soto v. City of Laredo*, 764 F.Supp. 448, 452 (S.D.Tex. 1991).

In this case, plaintiffs allege, with supporting evidence, that they received an inadequate explanation of the bases for their termination, the process by which the decision to terminate them was made, and the information used to support the commissioners' decision to terminate them.[22] During conversations with Hill on November 16, 1990, plaintiffs were informed that they would be terminated due to "reorganization" of the commissioners office, but were not given any information about the specific reasons behind their terminations. In the letter they received on December 4, 1990, plaintiffs were told nothing more.

In addition, the plaintiffs allege, and the defendants concede,[23] that the plaintiffs were not afforded an opportunity to be heard prior to their terminations. Thus, plaintiffs (i) have stated actionable § 1983 claims predicated upon their right to adequate notice and a pretermination hearing under the Due Process Clause of the Fourteenth Amendment and (ii) have supported them with sufficient evidence to withstand a motion for summary judgment.

### 2. The Declassification Claims

■ The Court finds, however, that the claims based upon the commissioners' decision to declassify the positions of employees in the commissioners' office (counts II, VIII, XIV, and portions of counts III, IX, and XV) lack merit. The plaintiffs have failed to raise a genuine issue of material fact concerning the proposition that this decision was based on individualized determinations regarding the plaintiffs rather than broader policy-based concerns. Plaintiffs have also failed to rebut defendants' contention that the provisions of the Cecil County Code which rendered the plaintiffs' positions classified could be altered or amended at any time by a vote of the county commissioners. Thus, the Court finds that the plaintiffs have failed, as a matter of law, to establish an issue for trial concerning their alleged property interest in the continued classified status of their positions.[24] *See Hartman v. City of Providence*, 636 F.Supp. 1395, 1416 (D.R.I.1986). Accordingly, the Court will grant the defendants' motion for summary judgment with

In *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir.1976), the Second Circuit found that government employees may be entitled to a pretermination hearing when, as in this case, the decision to lay them off is based on "potentially erroneous factual premises." In *Mims v. Board of Educ. of City of Chicago*, 523 F.2d 711, 715 (7th Cir.1975), the Seventh Circuit emphasized that government employees facing a layoff have "a property interest in their continued active employment," and that there must be procedures "by which an employee could obtain review of a layoff decision to ensure that it was not for an impermissible reason or to demonstrate that he or she should have been retained."

Because the defendants concede in their motion that plaintiffs were only afforded an opportunity to be heard post-termination, the Court assumes, for the purpose of this motion, that no

pretermination procedure was available to plaintiffs. Motion to Dismiss, or, in the Alternative for Summary Judgment at 24.

**22.** Joint Declaration of Plaintiffs.

**23.** *See* footnote 21.

**24.** The Court notes that plaintiffs were terminated before their positions were rendered unclassified, and that the alleged conspiracy to terminate them, as well as their initial notice of termination, took place prior to December 4, 1990. Thus, the Court's decision with respect to the declassification claims does not undermine plaintiffs' due process claims. *See* Plaintiffs' exhibit 14 (Minutes of December 4 meeting).

respect to counts II, VIII, XIV, and those portions of counts III, IX, and XV that concern the declassification issue.

### 3. Conspiracy Counts

 In counts IV, X, and XVI, plaintiffs allege that the five individual defendants engaged in a conspiracy to deprive the plaintiffs of their due process rights under the Fourteenth Amendment. In order to prove a § 1983 conspiracy, the plaintiffs must show that the defendants "reached an understanding to deny [the plaintiffs their] rights." *Bailey v. Board of County Commissioners of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992). In addition, the plaintiffs must prove that at least one "actionable wrong" took place in support of the conspiracy. *Id.*

The Court finds that the plaintiffs have raised a genuine issue of material fact concerning the existence of a conspiracy between the commissioners and Hill to deprive the plaintiffs of their right to due process protection prior to termination. As discussed in section II(B)(1)(a) of this memorandum, plaintiffs have submitted substantial evidence tending to show that the commissioners and Hill discussed the plaintiffs' job qualifications and "reached an understanding" to terminate the plaintiffs for personal and political reasons without affording plaintiffs appropriate notice or the opportunity to be heard. Moreover, the commissioners were notified by a letter from their attorneys dated November 23, 1990 that it was illegal to terminate the plaintiffs because of their political affiliations.[25] As discussed in section II(B)(4)(a) of this memorandum, the defendants should have also been aware of the plaintiffs' right to adequate notice prior to termination as well as a pretermination hearing.

In addition, there is evidence in the record of "overt acts" undertaken in pursuance of this agreement, including, but not limited to: (i) a meetings between Hill and the plaintiffs cursorily informing them of the commission-

ers' decision to terminate them and (ii) the commissioners' December 4, 1990 vote terminating them. Thus, plaintiffs have stated an actionable § 1983 claim against the commissioners and Hill, and supported it with sufficient evidence to withstand a motion for summary judgment.[26]

### 4. The Defendants

#### a. The Commissioners

 The Commissioners contend that the § 1983 claims against them must be dismissed because they are protected by absolute legislative immunity for their December 4, 1990 vote to reorganize the commissioners' office and terminate the plaintiffs.[27] In *Bruce v. Riddle*, 631 F.2d 272, 274–80 (4th Cir.1980), the Fourth Circuit recognized that local legislators are protected by absolute immunity against liability for actions taken in their legislative capacities. In order to benefit from absolute immunity, however, a local legislator bears the burden of proving that his or her actions were "in the sphere of legitimate legislative activity." *Tenny v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). If his or her actions were administrative or executive in character, the legislator is only entitled to qualified immunity in a § 1983 action.

 In order to determine whether a local legislator's actions are best characterized as legislative or administrative, courts examine a number of issues and questions, including: (i) whether the legislator's action or decision was based on general policy considerations or specific facts relating to particular individuals and (ii) whether the action establishes a general policy or singles out specifiable individuals for differential treatment. *Acevedo–Cordero v. Cordero–Santiago*, 958 F.2d 20, 23 (1st Cir.1992); *Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir.1988).

The Court finds that the commissioners' vote to terminate the plaintiffs was executive

---

**25.** Complaint Exhibit 1.

**26.** As discussed in section II(B)(4)(c) of this memorandum, the Court will dismiss defendant Sealover as a party to this action.

**27.** To the extent that the commissioners, Hill, and Sealover are sued in their official capacities, they are not protected by either absolute or qualified immunity. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

in nature, because it "neither applied to the general community, nor involved the promulgation of legislative policy as a defined and binding rule of conduct." *Bateson* at 1304. Thus, the commissioners are not entitled to absolute immunity for their vote to terminate the plaintiffs.[28]

▉ Defendants contend in the alternative that the commissioners are entitled to qualified immunity because their decision to terminate the plaintiffs was not improperly motivated. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, the Supreme Court held that "government officials performing discretionary functions generally are shielded from civil liability for civil damages insofar as the conduct does not violate clearly established constitutional or statutory rights."

The Court finds that the rights at issue in the instant action, namely a tenured public employee's property interest in continued employment and her right to adequate notice and an opportunity to be heard prior to termination, were clearly established by the Supreme Court well before the fall of 1990, the time of the incidents in question. *See,* e.g., *Board of Regents v. Roth,* 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972) (tenured public employee's property interest in continued employment); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (government employee's right to adequate notice and pretermination hearing);

*Sturgess v. Negley,* 761 F.Supp. 1089, 1097 (D.Del.1991). As a result, the commissioners "knew or reasonably should have known that the action [they] took ... would violate the constitutional rights of the [plaintiffs]." *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2737.

The Court also finds that the plaintiffs' have adduced sufficient evidence tending to show that the commissioners (and Hill) acted with reckless indifference to their established rights. Thus, the commissioners are not entitled to qualified immunity for the acts in question in this case.[29] *See Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). Accordingly, the Court will deny the defendants' motion for summary judgment with respect to the commissioners as to counts IV, X, and XVI.

b. Hill

▉ Defendants contend that Hill cannot be held liable for the legislative acts of the commissioners. According to defendants, Hill acted only pursuant to instructions by the County Commissioner. Plaintiffs respond, with supporting evidence, that Hill influenced the commissioners' decision to terminate plaintiffs by telling the commissioners that the plaintiffs possessed "marginal skills and abilities," "performed inadequately," and/or lacked necessary skills.[30] As discussed earlier, plaintiffs further allege, with substantial supporting evidence, that Hill met with the commissioners to discuss the possibility of "swapping" the plaintiffs for other employees, or of engaging in a pretex-

---

**28.** Defendants contend that *Rateree v. Rockett,* 852 F.2d 946 (7th Cir.1988), mandates a different result. The Court disagrees. In *Rateree,* the Seventh Circuit stated that "the government official seeking immunity [ ] has the burden of showing that an exemption from personal immunity is justified 'by overriding considerations of public policy.' " *Id.* at 950. Although the *Rateree* court found that the legislators in question were entitled to absolute immunity, *Rateree* is factually distinguishable from the instant case. In *Rateree,* the plaintiffs' jobs were eliminated pursuant to the enactment of a city's annual budget ordinance, the city for which they worked had a $1.2 million budget deficit, and no one was hired to replace them. *Id.* at 948; *Rateree v. Rockett,* 630 F.Supp. 763, 771 (N.D.Ill.1986). Here, there is evidence that the commissioners acted in pursuit of their private interests rather than the public good. Moreover, Cecil County arguably had a

substantial budget surplus at the time plaintiffs were terminated, the elimination of their positions was deemed a personnel matter having nothing to do with the annual budget process, plaintiffs were "singled out", and plaintiffs were replaced by "loyalists". 630 F.Supp. at 771.

*Drayton v. Mayor and Council of Rockville,* 699 F.Supp. 1155 (D.Md.1988), also involved job elimination through the budgetary process, and is distinguishable from the instant case.

**29.** The Court also notes that, in *Harris v. Eichbaum,* 642 F.Supp. 1056, 1066 (D.Md.1986), this Court found that, in § 1983 cases in which the defendants' subjective intent is at issue, summary judgment should be denied if "there is any direct evidence that the official[s]' actions were improperly motivated."

**30.** Declaration of William Edward Cole, Jr. § 11.

tual reorganization of the commissioners' office in order to achieve the commissioners' ends.

Thus, plaintiffs have created a genuine issue of fact regarding a "causal connection" between Hill's recommendations to the commissioners and plaintiffs' terminations. *Wulf v. City of Wichita,* 883 F.2d 842, 864 (10th Cir.1989). As a result, Hill is a proper defendant in this action and can be sued in his individual capacity.

Defendants contend, however, that Hill is entitled to qualified immunity from suit. For the reasons discussed above, the Court finds that Hill is not entitled to qualified immunity for his involvement in the plaintiffs' terminations. Accordingly, the Court will deny the defendants' motion to dismiss Hill as a party to this action.

c. Sealover

■ Plaintiffs have failed to adduce any evidence tending to establish that Sealover played a causal or significant role in the elimination of their positions. Sealover did not become a county official until December 4, 1990, and he played little or no role in the commissioners' decision to terminate the plaintiffs.[31] Thus, Sealover will be dismissed as a party to this action.

d. Cecil County

■ In order to state a § 1983 claim against a local or county government, plaintiffs must show that the act which resulted in the alleged violation of their constitutional rights resulted from an act of the municipality itself. An act of a municipality is defined as an act undertaken pursuant to city custom or policy, i.e., acts which the city has officially sanctioned or ordered. This includes the acts of city officials who possess "final authority to establish municipal policy with respect to the action ordered."[32] *Pembaur v. Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Because the commissioners clearly possessed the "final

authority to establish municipal policy" with respect to employment in their office, Cecil County is a proper defendant to this action. As discussed *infra,* there is also sufficient evidence in the record to withstand the defendants' motion to dismiss plaintiffs' substantive claims. Accordingly, the motion for summary judgment with respect to counts I, VII, and XIII will be denied.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In counts V, XI, and XVII, plaintiffs allege intentional infliction of emotional distress claims against the five individual defendants.

■ In order to sustain a claim for intentional infliction of emotional distress under Maryland law, plaintiffs must show that: (i) defendants' conduct was intentional or reckless; (ii) defendants' conduct was extreme and outrageous; (iii) there was a causal connection between the wrongful conduct and the emotional distress; and (iv) the emotional distress suffered was severe. *Foor v. Juvenile Services,* 78 Md.App. 151, 174, 552 A.2d 947 (1989).

Plaintiffs have made no showing that the defendants' conduct was sufficiently extreme or outrageous to state a cause of action for intentional infliction of emotional distress. Moreover, under Maryland law, a plaintiff is required to show that, as a result of the defendant's actions, she suffered "a severely disabling emotional response, so acute that no reasonable [wo]man could be expected to endure it." *Leese v. Baltimore County,* 64 Md.App. 442, 497 A.2d 159, 174 (1985). Plaintiffs have failed to produce any evidence in support of the proposition that they suffered disabling emotional distress as a result of their allegedly unlawful terminations. As a result, the Court will grant the defendants' motion for summary judgment with respect to counts V, XI, and XVII.

---

**31.** Declaration of Edward L. Sealover ¶¶ 2, 5, Cole Dep. at 102.

**32.** The question of whether a particular official has final policymaking authority for the city is

determined by state law. *See Jett v. Dallas Indep. School Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

**1290**

### D. INTERFERENCE WITH CONTRACT

 Finally, in counts VI, XII, and XVIII, plaintiffs allege that the commissioners, Hill, and Sealover interfered with their employment contract with the county in violation of Maryland law. The defendants respond that they are protected by qualified official immunity. In order to benefit from qualified official immunity under Maryland law, the defendants must establish the following: (i) they are public officials; (ii) the allegedly culpable conduct was committed while they acted in a discretionary capacity; and (iii) they acted without actual malice. *Bradshaw v. Prince George's County*, 284 Md. 294, 396 A.2d 255 (1979); *Leese*, 497 A.2d at 178.

The Court finds that the defendants have established that they acted as public officials during the time of the incidents in question and that their allegedly culpable conduct took place while they acted in a discretionary capacity. With respect to the third requirement for official immunity, the standard for "actual malice" needed to defeat official immunity under Maryland law requires "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff." *Leese*, 497 A.2d at 178 (citation omitted). Actual malice may be inferred. *Id.*

In this case, however, the Court finds that plaintiffs have failed to adduce any evidence that demonstrates that the acts of the defendants were motivated by hatred or rancor rather than recklessness, indifference, expediency, and/or political concerns. The commissioners did not know the plaintiffs personally at the time they terminated the plaintiffs, and there is no evidence in the record that indicates that Hill acted with actual malice. Thus, while the individual defendants are not entitled to qualified immunity for § 1983 purposes [33], they are entitled to official immunity under Maryland law. Ac-

cordingly, the Court will grant summary judgment in defendants' favor with respect to counts VI, XII, and XVIII of the complaint.

### III. CONCLUSION

For the reasons set forth above, the Court will grant summary judgment in defendants' favor with respect to counts II, V, VI, VIII, XI, XII, XIV, XVII, and XVIII, and those portions of counts III, IX, and XV that concern the declassification issue. The Court will also dismiss defendant Sealover as a party to this action. The Court will deny the defendants' motion for summary judgment with respect to counts I, IV, VII, X, XIII, and XVI, and those portions of counts III, IX, and XV that concern the plaintiffs' terminations. To the extent that plaintiffs' § 1983 claims rest upon alleged violations of state or county law, however, they will be dismissed.

---

**33.** As the Court noted earlier, a government official is not entitled to qualified immunity under § 1983 if he or she acts with reckless indifference to plaintiffs' established constitutional rights. In contrast to Maryland law, actual malice need not be established in order to defeat a qualified immunity defense under § 1983. *Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *see also Leese v. Baltimore County*, 497 A.2d at 181 (comparing official immunity under Maryland and federal law).