Cynthia J. GILLON Plaintiff,

v.

BALTIMORE COUNTY, Maryland,
et al.   Defendants.

No.  CIV.A. RDB–03–2989.

United States District Court,
D. Maryland.

June 29, 2004.

Harold D. Young, Harold D. Young PA, Pikesville, MD, Harold Young, III, Baltimore, MD, for Plaintiff.

James J. Nolan, Jr., Edward J Gilliss, Baltimore County Office of Law, Towson, MD, for Defendants.

## MEMORANDUM OPINION

BENNETT, District Judge.

Pending are: (1) the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; (2) the Defendants' Motion to Strike the Plaintiff's Opposition as untimely; and (3) the Defendants' Motion to Strike the Plaintiff's Surreply. No oral argument is necessary. *See* Local Rule 105.6 (D.Md.2001). For the reasons that follow, the Court will DENY the Defendants' Motion to Strike the Plaintiff's Opposition, GRANT the Defendants' Motion to Strike the Plaintiff's Surreply, and GRANT the Defendants' Motion for Summary Judgment.

## BACKGROUND

On September 5, 2003, Plaintiff Cynthia J. Gillon ("Gillon" or "Plaintiff") filed a five-count Complaint in the Circuit Court for Baltimore County alleging: (1) Negligence; (2) Constructive Fraud; (3) Civil Conspiracy; (4) Aiding and Abetting; and (5) Intentional Infliction of Emotional Distress. The Plaintiff styled her Complaint as a "wrongful termination" claim grounded upon violations of the Baltimore County Code, the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment"), and Article 24 of the Maryland Declaration of Rights ("Article 24"). (Complaint, ¶ 4.) She demanded, *inter alia*, $250,000 in compensatory damages, $2,500,000 in punitive damages, and an order placing her into a Management Assistant IV, salary grade 32, position with Baltimore County. Named as defendants by the Plaintiff were: (1) Baltimore County, Maryland (the "County"), a local government entity; (2) James P. O'Neill ("O'Neill"), Administrator of the County Bureau of Corrections (the "Bureau"), individually and in his official capacity; (3) Frederick J. Homan ("Homan"), County Director of the Office of Budget and Finance, in his official capacity; and (4) Antony Sharbaugh ("Sharbaugh"), County Director of the Office of Human Resources, individually and in his official capacity (the County, O'Neill, Homan, and Sharbaugh collectively are referred to hereinafter as the "Defendants").

Gillon was a County Bureau employee from October 18, 1999 to September 6, 2002. During that time, her job classification was Management Assistant IV, merit-based salary grade 32.

In April of 2001, the County named Defendant O'Neill Acting Administrator of the Bureau.[1] Shortly thereafter, Defendant O'Neill discussed a plan to reorganize the Bureau's administrative structure to improve efficiency. As part of the planned reorganization, certain Bureau positions would be abolished. Defendants Homan and Sharbaugh participated in the reorganization discussions, and agreed that the Bureau needed such a change. Later, the Bureau submitted its reorganization plan through the County's budget process. The County Council (the "Council") approved and adopted the reorganization plan through its July 1, 2002 legislative enactment of the County's fiscal year 2002–2003 budget (the "Budget").[2]

Prior to the Council's approving and enacting the Budget, Defendant O'Neill, on

---

1. In November of 2001, Defendant O'Neill was appointed as full-time Bureau Administrator.

2. The Council previously read and passed the Budget on May 24, 2002.

or about April 12, 2002, informed Gillon that as a result of the Bureau's aforementioned reorganization plan, her position, along with four others, would be abolished.[3] However, she could compete for any of the new Bureau positions created under the reorganization. The County accepted applications for the newly created positions from both County employees and non-County employees. Gillon interviewed for three of the new positions—Personnel Analyst III, Human Services Program Manager, and Management Assistant III—but the County did not select her for any of these posts.

On May 24, 2002, in accordance with the procedures set forth in section 7.4 of the County Personnel Manual, Gillon filed a written grievance (termed a County "step 2" grievance) regarding the abolition of her position, alleging a violation of County Personnel Regulation ("Regulation") 13.02. Under that Regulation, "[a]ny employee in merit system status who has been laid off, transferred, or demoted through no fault of his own because of a reduction in force shall be considered for any position for which he is qualified before new employees are hired . . . ." Gillon contended that non-County employees should not be allowed to apply for the new positions created by the reorganization, that she should have automatically been given one of the new posts, and that the reorganization was a ruse to terminate her as a merit system employee. On June 21, 2002, Defendant O'Neill denied Dwonzyk's grievance.

About that same time, Gillon filed a complaint of racial and sexual discrimination with the County's Office of Fair Practices and Community Affairs ("Fair Practices Office") regarding the abolishment of her job. Gillon's suggested resolution of her Fair Practices Office complaint was for the County "to continue [her] employment . . . at [her] current paygrade or higher and to [give her] first consideration for any such vacancies." (Pl.['s] Opp'n Mem., Ex. 10.) In a letter dated July 15, 2002, the Fair Practices Office issued "a finding of no probable cause" as to Gillon's complaint. In so doing, the Fair Practices Office determined that Gillon "[was] not being singled out in the abolishment of [her] position," as "there were a total of five positions that were abolished due to a reorganization within the Bureau." *Id.*

Gillon did not appeal the Fair Practices Office decision, but did appeal O'Neill's June 21, 2002 decision.[4] Consequently, on July 29, 2002, she participated in a County "step 3" grievance appeal hearing conducted by County Administrative Officer John M. Wasilisin. On July 31, 2002, Administrative Officer Wasilisin denied Gillon's grievance *via* a written memorandum opinion. In his opinion, Administrative Officer Wasilisin concluded, *inter alia*, that Gillon's position had been eliminated by a lawful legislative action, and that a violation of Regulation 13.02 had not occurred because she was not laid off, transferred, demoted or terminated under a reduction in force. (Defs.['] Mem., App. at 21.) Administrative Officer Wasilisin further noted that under Baltimore County Code Regulation 4.01, Section 25–126, employment opportunities created by the reorganization "should be open to the public and not

---

**3.** Lester Dwonzyk, Sharon Tyler, Peggy Ann Lyon, and Tim Bruno also had their positions abolished under the reorganization. (Defs.['] Mem., App. at 7.) Mr. Dwonzyk, represented by the same counsel as Ms. Gillon, also filed a complaint with this Court, which is nearly identical to Gillon's Complaint. By an Order of June 29, 2004, this Court granted summary judgment in favor of the Defendants against Mr. Dwonzyk in civil case number RDB–03–2724.

**4.** Gillon has not alleged any racial or sexual discrimination in her Complaint presently before this Court.

restricted solely to current members of the classified service." *Id.* at 22.

On November 1, 2002, Gillon interviewed for the position of Chief of Administrative Support Services position. (Pl.['s] Opp'n Mem., Ex. 11.) The County did not select Gillon to fill this position. *Id.*

On February 11, 2003, Gillon interviewed for the position of Management Assistant III, salary grade 30, with the County Health Department. (Complaint, ¶ 30.) On March 5, 2003, the County selected another employee for that post, in part because Gillon had "[l]ess years of experience with Baltimore County, [and] lacked outstanding references." (Complaint, § 34.)

On February 12, 2003, the County Personnel and Salary Advisory Board (the "Board") conducted a public hearing concerning the consolidated appeals of Gillon and Lester Dwonzyk taken with respect to Administrative Officer Wasilisin's July 31, 2002 decision.[5] The hearing allowed for cross-examined testimony, and 11 witnesses testified. Gillon testified that she believed that the abolishment of her job was unlawful and that she should have been selected to fill one of the newly created positions. (Defs.['] Mem., App. at 27.) Gillon also expressed concern about her County personnel file not containing two yearly employment evaluations. *Id.* Notably, Gillon further testified that the people selected for the positions for which she applied were qualified, and that she did not disagree with the process implemented to fill those positions. *Id.*

On March 11, 2003, the County offered Gillon the position of Management Assis-

tant II, paygrade 26. (Complaint, § 35.) The next day, March 12, 2003, the Board denied the Plaintiff's final grievance appeal, finding, *inter alia,* that the Bureau's decision to abolish the Plaintiff's position was neither arbitrary or illegal and that the Plaintiff applied for new positions, was assessed by interview teams, but was not selected. (Defs.['] Mem., App. at 28.) However, the Board did direct Sharbaugh to insure that the County did not construe the lack of employee evaluation forms in Gillon's County personnel file negatively when considering her for job vacancies. *Id.*

On March 15, 2003, counsel for Gillon sent a letter to Sharbaugh, with a copy to, among others, Edward Gillis, County Attorney. (Pl.['s] Opp'n Mem., Ex. 11.) In the letter, Gillon's counsel stated that Sharbaugh had not complied with the Board's order regarding Gillon's lack of employee evaluations, and demanded that Sharbaugh place a letter in Gillon's personnel file explaining the missing evaluations.[6] *Id.* Gillon's counsel also wrote that the County's failure to select Gillon for the Chief of Administrative Support Services position "could be classified by a court of law as intentional infliction of emotional distress." *Id.* The letter concluded by requesting that Gillon be placed in the Management Assistant III position for which she had previously interviewed. *Id.*

Although Gillon's position had been eliminated by the Council's legislative enactment of the Budget on July 1, 2002, she continued to be employed in the same capacity with the Bureau until September 6, 2002. During this time, the County paid

---

5. The County recorded the hearing on cassette tape. Gillon repeatedly baldly asserts that the County "destroyed" two of the three copies of the cassette tape that recorded the proceedings. Such an assertion is unsupported by the record before this Court, and also has no bearing on Gillon's instant claims.

6. According to Gillon, Sharbaugh prepared the "explanatory" letter on March 20, 2003, and it was placed in her personnel file on March 31, 2003. (Complaint, ¶ 33.)

Gillon from funds that had been appropriated for the new reorganization positions. Once all of these positions were filled, however, Gillon's employment with the Bureau officially ended as the legislature had not provided additional funding for her position. Ultimately, on April 14, 2003, Gillon accepted the County's previous offer to fill the position of Management Assistant II, paygrade 26. (Pl.['s] Opp'n Mem. at 4.)

On August 15, 2003, the Plaintiff filed the present action. The Defendants, noting the federal claim in Count III of the Plaintiff's Complaint, duly removed the case to this Court pursuant to 28 U.S.C. § 1331.[7] The Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on October 22, 2003. On December 29, 2003, Plaintiff's counsel entered his appearance by written letter and filed an Opposition to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Opposition"). The Plaintiff's Opposition reiterates her belief that the reorganization process was not fair, and also avers that the County could have transferred her to another job instead of eliminating her position. (Pl.['s] Opp'n Mem. at 7.)

On January 9, 2004, the Defendants filed a Motion to Strike the Plaintiff's Opposition as untimely, along with a Reply to the Plaintiff's Opposition. In response, the Plaintiff filed a document entitled "Opposition to Defendants' Motion to Strike." Subsequently, the Defendants filed a Motion to Strike Plaintiff's Surreply, stating that the Plaintiff's last filing constituted, in part, an unauthorized surreply.

### STANDARD OF REVIEW

Because the parties rely upon affidavits and other documents outside of the pleadings, this Court will treat the Defendants'

motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...."). Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "When the moving party has met its responsibility of identifying the basis for its motion, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson*, 477 U.S. at 248, 106

---

7. This Court possesses supplemental jurisdiction over the state law claims asserted in

Counts I, II, IV, and V of the Plaintiff's Complaint pursuant to 28 U.S.C. § 1367.

S.Ct. 2505. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Id.* at 249–50, 106 S.Ct. 2505. District courts have an "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548).

## DISCUSSION

### A. Defendants' Motion to Strike Plaintiff's Opposition to Defendants' Motion for Summary Judgment

The Defendants have filed a Motion to Strike the Plaintiff's Opposition to their Motion for Summary Judgment on grounds that the Plaintiff's Opposition memorandum was untimely.[8] In response, the Plaintiff filed a document entitled "Opposition to Defendants' Motion to Strike."

For the reasons set forth by this Court in its Memorandum Opinion regarding the same motion in *Lester Dwonzyk v. Baltimore County,* 328 F.Supp.2d 572, 2004 WL 1774944 (D.Md.2004), the Defendants' Motion to Strike Plaintiff's Opposition will be DENIED. *See id.* at 576–77.

### B. Defendants' Motion to Strike Plaintiff's Surreply

The Defendants also have moved to strike portions of the Plaintiff's Opposition to Defendants' Motion to Strike as untimely, asserting that the majority of said document constitutes an unauthorized surreply to the Defendants' reply to the Plaintiff's Opposition to the Defendants' Motion for Summary Judgment. For the reasons set forth by this Court in its Memorandum Opinion regarding the same motion in *Lester Dwonzyk v. Baltimore County,* 328 F.Supp.2d 572, 2004 WL 1774944 (D.Md. 2004), the Defendants' Motion to Strike Plaintiff's Surreply is GRANTED. *See id.* at 577–78.

### C. Defendants' Motion for Summary Judgment

#### 1. Abolishment of Gillon's Position

The Plaintiff's five-count Complaint is one for "wrongful termination." (Complaint, ¶ 4.) Count I alleges that the Defendants were negligent in their application of the Personnel Law of Baltimore County as to retaining and promoting employees and administering personnel files. (Complaint, ¶ 38.) Count II avers that the "defendants withheld the documents that would prove that the plaintiff was illegally laid-off," thereby denying her "due process rights under Article 24 of the Maryland Declaration of Rights" ("Article 24"). (Complaint, ¶¶ 41–42.) Count III alleges a civil conspiracy regarding the Plaintiff's alleged wrongful termination against Defendants Homan and O'Neill under the Fourteenth Amendment of the United States Constitution ("Fourteenth Amendment"). (Complaint, ¶¶ 44–45.) Count IV contends that Defendant Sharbaugh "aided and abetted"

---

**8.** Because the Defendants' pending Motion to Dismiss or, in the alternative, Motion for Summary Judgment is being treated as one for summary judgment, it will be referred to hereinafter simply as "Motion for Summary Judgment."

Defendant Homan and Defendant O'Neill in the alleged wrongful termination. (Complaint, ¶ 47.) Finally, Count V asserts a claim for intentional infliction of emotional distress regarding the defendants' design "to deprive the plaintiff of her position with the county." (Complaint, ¶ 49.)

■ Counts II (Article 24), III (Fourteenth Amendment), and IV (aiding and abetting) of Gillon's Complaint are identical to claims brought by Lester Dwonzyk ("Dwonzyk") in *Lester Dwonzyk v. Baltimore County*, 328 F.Supp.2d 572, 2004 WL 1774944 (D.Md.2004). For the reasons set forth by this Court in its Memorandum Opinion regarding the identical Article 24, Fourteenth Amendment, and aiding and abetting claims brought by Dwonzyk, counts II, III, and IV of Gillon's Complaint are barred by the doctrine of absolute legislative immunity and also fail on the merits. (*See Lester Dwonzyk v. Baltimore County*, 378 F.Supp.2d 572, 2004 WL 1774944 (D.Md.2004), Mem. Op. at 578–81.) Gillon's claim of negligence in Count I and her claim of intentional infliction of emotional distress in Count V, with respect to the decision to abolish her position, are inextricably connected to the legislative act of the County in eliminating her position and, therefore, also are barred under absolute legislative immunity. *See id.* Furthermore, as described below, these claims viewed in their individual context are unsustainable.

### 2. *The Claim of Negligence*

Gillon's count of negligence contains an additional allegation of tortious activity regarding her not being hired for a particular job following the reorganization. Gillon contends that Defendant Sharbaugh's alleged failure to timely place an explanatory letter in her personnel file regarding any missing employee evaluations amounts to a viable negligence claim, because it resulted in her not being selected for one of the new reorganization positions. (Complaint, ¶ 39.)

■ To state a cause of action in negligence under Maryland law, a plaintiff must show: (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty. *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76, 642 A.2d 180, 188 (1994). Gillon cannot establish that a loss or injury proximately resulted from Sharbaugh's breach of a duty owed to her.[9]

■ Gillon contends the following facts evince Sharbaugh's negligence. A written yearly performance evaluation was not placed in her County personnel file on two

**9.** Of course, to state a tort action against the County and/or its employees acting within the scope of their duties requires that Gillon comply with the applicable notice requirements of Maryland's Local Government Tort Claims Act (LGTCA), Md.Code Ann., Cts. & Jud. Proc. §§ 5–301 *et seq. See* Md.Code Ann., Cts. & Jud. Proc. § 5–304(b)(2) (providing that an action for damages against Baltimore County or its employees may not be brought unless notice of the claim is provided to the County Attorney within 180 days after the injury); *see also Housing Auth. v. Bennett*, 359 Md. 356, 754 A.2d 367 (2000) (describing that the LGTCA makes local governments liable for judgments for compensatory damages rendered against their employees, in suits against the employees based on tortious acts committed in the scope of their governmental employment). For the purposes of the following analysis of the merits of Gillon's remaining tort claims, this Court will assume, *arguendo*, that the March 15, 2003 letter from Gillon's counsel to, among others, County Attorney Edward Gillis, constituted substantial compliance with the notice requirements of the LGTCA. *See Bibum v. Prince George's County*, 85 F.Supp.2d 557, 564–565 (D.Md.2000).

occasions. In its March 12, 2003 order concerning her final grievance appeal, the County Personnel and Salary Advisory Board directed Sharbaugh "to insure that the lack of employee evaluations [for Gillon] is not considered in any way by any county agency when considering [Gillon] for [a] vacant position and in making a decision on whom to hire." (Complaint, ¶ 32.) According to Gillon, Sharbaugh did not place an explanation letter about the missing evaluations in her personnel file until March 31, 2003. (Complaint, ¶ 34). The County selected another candidate for a position that Gillon applied for, Management Assistant III, salary grade 30 ("Assistant") with the County Health Department, on March 5, 2003. *Id.* Gillon opines that the alleged negligent delay of an explanatory letter being placed in her file resulted in her not being selected for the Assistant post. Even assuming, *arguendo,* that Sharbaugh owed a duty to Gillon as a result of the Board's order, Gillon plainly cannot establish that the lack of an explanation letter was the proximate cause of her not receiving the Assistant position. Gillon interviewed for the desired position on February 11, 2003. On March 5, 2003, seven days prior to Sharbaugh receiving the Board's order, the County selected another candidate for the Assistant post. Thus, Sharbaugh's actions following the Board's order could not have had any impact on Gillon not being selected for the Assistant position, since the Board's instructions to Sharbaugh were delivered after the County had filled the position. Accordingly, Gillon's alternative claim of negligence is without merit.

### 3. *The Claim of Intentional Infliction of Emotional Distress*

Finally, Gillon also alleges that the Defendants committed the tort of intentional infliction of emotional distress by not selecting her for the position of Chief of Administrative Support Services. Gillon avers that she interviewed for said position on November 1, 2002, "but was not given the position after the first ranked candidate did not fill it." (Pl.['s] Opp., Ex. 11.) Consequently, Gillon believes that she has a viable intentional infliction of emotional distress claim against the Defendants.

■ "Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Solis v. Prince George's County,* 153 F.Supp.2d 793, 804, 808 (D.Md.2001) (internal citations omitted); *see also Kentucky Fried Chicken Nat'l Management Co. v. Weathersby,* 326 Md. 663, 607 A.2d 8, 16 (1992) (citations omitted) (providing that to prevail on an intentional infliction of emotional distress claim a plaintiff must "show that the conduct complained of crossed the threshold of decency into a realm of atrocity that could only be regarded as untolerable in a civilized society"). In order to establish a *prima facie* case for this tort, a plaintiff must allege and prove facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. *Harris v. Jones,* 281 Md. 560, 380 A.2d 611, 614 (1977). "[I]t is for the court to determine, in the first instance, whether the defendant's conduct [in an intentional infliction of emotional distress case] may reasonably be regarded as so extreme and outrageous as to permit recovery." *Kentucky Fried Chicken,* 607 A.2d at 16 (citations omitted).

■ Gillon's allegation of intentional infliction of emotional distress falls woefully short of the high threshold necessary to sustain her claim. That is, merely not being offered a desired employment posi-

tion is far removed from the extreme and outrageous conduct required to establish a *prima facie* case. *See Kentucky Fried Chicken*, 607 A.2d at 16 (finding that conduct did not "reach the level of outrageousness the tort requires," in a case where plaintiff suffered a nervous breakdown in response to her demotion from store manager to assistant manager); *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md.App. 772, 614 A.2d 1021, 1035 (1992) (holding that employer's conduct in discharging employee with whose services they were no longer satisfied fell "glaringly" short of extreme and outrageous behavior necessary to sustain tort); *see also Arbabi v. Fred Meyers, Inc.*, 205 F.Supp.2d 462, 466 (D.Md.2002) (collecting sample of cases from this District in which allegations of intentional infliction of emotional distress failed to clear the dispositive motion stage). Accordingly, Gillon's claim of intentional infliction of emotional distress concerning not being selected to fill the Chief of Administrative Support Services position is unsustainable.

For all of the above reasons, the Plaintiff's five-count Complaint, which is largely based upon her opinion that the abolishment of her position was unlawful, must be dismissed as a matter of law. Therefore, the Defendants' Motion for Summary Judgment is GRANTED.

### CONCLUSION

Based upon the foregoing reasons, an Order will be entered separately DENYING the Defendants' Motion to Strike the Plaintiff's Opposition, GRANTING the Defendants' Motion to Strike the Plaintiff's surreply, and GRANTING the Defendants' Motion for Summary Judgment, and ENTERING JUDGMENT in their favor, against the Plaintiff.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is this 29th day of June 2004, by the United States District Court for the District of Maryland, hereby ORDERED:

4. That the Defendants' Motion to Strike the Plaintiff's Opposition (Paper 15) is DENIED;

5. That the Defendants' Motion to Strike the Plaintiff's Surreply (Paper 18) is GRANTED;

6. That the Defendants' Motion for Summary Judgment (Paper 4) BE, and the same hereby IS, GRANTED; and

7. That judgment BE, and the same hereby IS, ENTERED in favor of the Defendants, and against the Plaintiff.