Lester J. DWONZYK Plaintiff,

v.

BALTIMORE COUNTY, Maryland, et al. Defendants.

No. CIV.A. RDB–03–2724.

United States District Court, D. Maryland.

June 29, 2004.

Harold Young, III, Baltimore, MD, for Plaintiff.

James J. Nolan, Jr., Edward J. Gilliss, Baltimore County Office of Law, Towson, MD, for Defendants.

## MEMORANDUM OPINION

BENNETT, District Judge.

Pending are: (1) the Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; (2) the Defendants' Motion to Strike the Plaintiff's Opposition as untimely; and (3) the Defendants' Motion to Strike the Plaintiff's Surreply. No oral argument is necessary. *See* Local Rule 105.6 (D.Md.2001). For the reasons that follow, the Court will DENY the Defendants' Motion to Strike the Plaintiff's Opposition, GRANT the Defendants' Motion to Strike the Plaintiff's Surreply, and GRANT the Defendants' Motion for Summary Judgment.

## BACKGROUND

On August 15, 2003, Plaintiff Lester J. Dwonzyk (the "Plaintiff" or "Dwonzyk") filed a five-count Complaint in the Circuit Court for Baltimore County alleging: (1) Wrongful Discharge; (2) Constructive

Fraud; (3) Civil Conspiracy; (4) Aiding and Abetting; and (5) Age Discrimination. The Plaintiff styled his Complaint as a "wrongful termination and age discrimination" action grounded upon violations of the Baltimore County Code, the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment"), and Article 24 of the Maryland Declaration of Rights ("Article 24"). (Complaint, ¶ 3.) He demanded, *inter alia,* $250,000 in compensatory damages, $2,500,000 in punitive damages, and an order placing him into a salary grade 30 Personnel Analyst III position with Baltimore County. Named as defendants by the Plaintiff were: (1) Baltimore County, Maryland (the "County"), a local government entity; (2) James P. O'Neill ("O'Neill"), Administrator of the County Bureau of Corrections (the "Bureau"), individually and in his official capacity; (3) Frederick J. Homan ("Homan"), County Director of the Office of Budget and Finance, in his official capacity; and (4) Antony Sharbaugh ("Sharbaugh"), County Director of the Office of Human Resources, in his official capacity (the County, O'Neill, Homan, and Sharbaugh collectively are referred to hereinafter as the "Defendants").

Dwonzyk, who was 60 years old at the time he filed his Complaint, was a County Bureau employee from March 13, 2000 to September 6, 2002. During that time, his job classification was Personnel Analyst II, merit-based salary grade 26.

In April of 2001, the County named Defendant O'Neill Acting Administrator of the Bureau.[1] Shortly thereafter, Defendant O'Neill discussed a plan to reorganize the Bureau's administrative structure to improve efficiency. As part of the planned reorganization, certain Bureau positions would be abolished. Defendants Homan and Sharbaugh participated in the reorganization discussions, and agreed that the Bureau needed such a change. Later, the Bureau submitted its reorganization plan through the County's budget process. The County Council (the "Council") approved and adopted the reorganization plan through its July 1, 2002 legislative enactment of the County's fiscal year 2002–2003 budget (the "Budget").[2]

Prior to the Council's approving and enacting the Budget, Defendant O'Neill, on or about April 14, 2002, informed Dwonzyk that as a result of the Bureau's aforementioned reorganization plan, his position, along with four others, would be abolished.[3] However, he could compete for any of the new Bureau positions created under the reorganization. The County accepted applications for the newly created positions from both County employees and non-County employees. Dwonzyk chose to interview for just one of the new positions, a Personnel Analyst III post, but the County did not select him for that job.[4]

On May 24, 2002, in accordance with the procedures set forth in section 7.4 of the County Personnel Manual, Dwonzyk filed a written grievance (termed a County "step 2" grievance) regarding the abolition of his position, alleging a violation of County Personnel Regulation ("Regulation") 13.02. Under that Regulation, "[a]ny employee in merit system status who has

---

1. In November of 2001, Defendant O'Neill was appointed as full-time Bureau Administrator.

2. The Council previously read and passed the Budget on May 24, 2002.

3. Cynthia Gillon, Sharon Tyler, Peggy Ann Lyon, and Tim Bruno also had their positions abolished under the reorganization. (Defs.['] Mem., App. at 7.) Ms. Gillon has filed a complaint against the Defendants similar to that of the Plaintiff, which is pending before this Court in civil case number RDB–03–2989.

4. The County selected John Jolley, a 63 year old non-County employee with 34 years of experience, for the position.

been laid off, transferred, or demoted through no fault of his own because of a reduction in force shall be considered for any position for which he is qualified before new employees are hired . . . ." Dwonzyk contended that non-County employees should not be allowed to apply for the newly created positions, and that the reorganization was a ruse to terminate him as a merit system employee. On June 21, 2002, Defendant O'Neill denied Dwonzyk's grievance. The Plaintiff appealed Defendant O'Neill's decision. Consequently, on July 29, 2002, he participated in a County "step 3" grievance appeal hearing conducted by County Administrative Officer John M. Wasilisin. On July 31, 2002, Administrative Officer Wasilisin denied his grievance *via* a written memorandum opinion. In his opinion, Administrative Officer Wasilisin concluded, *inter alia*, that Dwonzyk's position had been eliminated by a lawful legislative action, and that a violation of Regulation 13.02 had not occurred because the Plaintiff was not laid off, transferred, demoted or terminated under a reduction in force. (Defs.['] Mem., App. at 21.) Administrative Officer Wasilisin further noted that under Baltimore County Code Regulation 4.01, Section 25–126, employment opportunities created by the reorganization "should be open to the public and not restricted solely to current members of the classified service." *Id.* at 22. Soon thereafter, the Plaintiff appealed Administrative Officer Wasilisin's decision.

On February 12, 2003, the County Personnel and Salary Advisory Board (the "Board") conducted a public hearing concerning Dwonzyk's appeal of Administrative Officer Wasilisin's decision. The hearing allowed for cross-examined testimony, and 11 witnesses testified. The Plaintiff testified that he believed one reason for the reorganization was to allow Defendant O'Neill to hire John Jolley, who the County selected for the one reorganization position for which the Plaintiff applied. (Defs.['] Mem., App. at 27.) On March 12, 2003, the Board denied the Plaintiff's final grievance appeal, finding, *inter alia*, that the Bureau's decision to abolish the Plaintiff's position was neither arbitrary or illegal and that the Plaintiff chose to interview for just one reorganization position, was assessed by interview teams, but was not selected. (Defs.['] Mem., App. at 26, 28.)

Although Dwonzyk's position had been eliminated by the Council's legislative enactment of the Budget on July 1, 2002, he continued to be employed in the same capacity with the Bureau until September 6, 2002. During this time, Dwonzyk was paid from funds that had been appropriated for the new reorganization positions. Once all of these positions were filled, however, Dwonzyk's employment with the Bureau officially ended as the legislature had not provided additional funding for his position.

Ultimately, on August 15, 2003, the Plaintiff filed the present action. The Defendants, noting the federal claims in Counts 1, 3 and 5 of the Plaintiff's Complaint, duly removed the case to this Court pursuant to 28 U.S.C. § 1331.[5] The Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on October 22, 2003. On December 29, 2003, Plaintiff's counsel entered his appearance by written letter and filed an Opposition to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Opposition"). The Plaintiff's Opposition reiterates the Plaintiff's belief that the reorganization process was not fair, and also avers that the County could have transferred him to another job instead of eliminating his position.

---

5. This Court possesses supplemental jurisdiction over the state law claims asserted in Counts 2 and 4 of the Plaintiff's Complaint pursuant to 28 U.S.C. § 1367.

(Pl.['s] Opp'n Mem. at 7.) The Plaintiff further contends that two individuals who allegedly are younger than him, Cynthia Gillon and Anne Lyon, were rehired by the County following the similar abolishment of their Bureau positions. (Pl.['s] Opp'n. Mem. at 4.)

On January 9, 2004, the Defendants filed a Motion to Strike the Plaintiff's Opposition as untimely, along with a Reply to the Plaintiff's Opposition. In response, the Plaintiff filed a document entitled "Opposition to Defendants' Motion to Strike." Subsequently, the Defendants filed a Motion to Strike Plaintiff's Surreply, stating that the Plaintiff's last filing constituted, in part, an unauthorized surreply.

## STANDARD OF REVIEW

Because the parties rely upon affidavits and other documents outside of the pleadings, this Court will treat the Defendants' motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."). Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "When the moving party has met its responsibility of identifying the basis for its motion, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Id.* at 249–50, 106 S.Ct. 2505. District courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548).

## DISCUSSION

### A. Defendants' Motion to Strike Opposition to Defendants' Motion for Summary Judgment

The Defendants have filed a Motion to Strike the Plaintiff's Opposition to their

Motion for Summary Judgment on grounds that the Plaintiff's Opposition memorandum was untimely.[6] In response, the Plaintiff filed a document entitled "Opposition to Defendants' Motion to Strike."

Under the Local Rules of this Court, "all memoranda in opposition to a motion shall be filed within fourteen days of the service of the motion . . . ." Local Rule 105.2. In the present case, the Plaintiff's Opposition to the Defendants' Summary Judgment motion was due on or before November 7, 2003. However, the Plaintiff did not seek an enlargement of time prior to filing his Opposition memorandum, which was accompanied by a cover letter ("Letter") entering his appearance before this Court, until December 29, 2003.

Federal Rule of Civil Procedure 6(b)(2) governs motions for enlargement of time sought after expiration of the specified time period. The rule provides a district court with discretion to order an extension even after the expiration of a specified time period, but only for "cause shown" and if the failure to act in a timely fashion is the result of "excusable neglect." *See* Fed.R.Civ.P. 6(b)(2). The Supreme Court defined the meaning of excusable neglect in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), a case dealing with late filings in bankruptcy proceedings. In defining neglect, the Supreme Court reasoned that courts could accept late filings due to inadvertence, mistake or carelessness, and intervening circumstances beyond a party's control. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 388, 113 S.Ct. 1489. To ascertain whether a delay in filing is excusable, courts must consider "all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489.

The Plaintiff's December 29, 2003 letter addressed to this Court will be treated as a motion to enlarge under Rule 6(b)(2). *See, e.g., Marbly v. Home Properties of New York*, 183 F.Supp.2d 950, 954 (D.Mich.2002) (finding that although defendant did not file a formal motion for enlargement of time to respond to plaintiff's motion for summary judgment, the court had discretion to entertain untimely response). Moreover, the Letter, and subsequent Opposition to Defendants' Motion to Strike, reveal circumstances sufficient for this Court to find, in an exercise of its discretion, that the untimeliness of the Plaintiff's Opposition to the Defendants' Motion for Summary Judgment resulted from excusable neglect. First, the Plaintiff filed the instant action in state court. At the time the Defendants duly removed the case to this Court, Plaintiff's counsel was not admitted to practice before this Court. Plaintiff's counsel was admitted to this Court on December 12, 2003, which, according to Plaintiff's counsel, was the first date that his attorney-sponsor was available to attend the requisite admission ceremony. The Plaintiff filed a response to the Defendants' pending Motion, along with the aforementioned Letter, on December 29, 2003. Given the surrounding circumstances, all of which were out of the Plaintiff's personal control, this Court finds, in the exercise of its discretion, that the delay in filing was inadvertent and excusable. Accordingly, the Defendants' Motion to Strike Plaintiff's Opposition will be DENIED.

### B. Defendants' Motion to Strike Plaintiff's Surreply

The Defendants also have moved to strike portions of the Plaintiff's Opposition

---

**6.** Because the Defendants' pending Motion to Dismiss or, in the alternative, Motion for Summary Judgment is being treated as one for summary judgment, it will be referred to hereinafter simply as "Motion for Summary Judgment."

to Defendants' Motion to Strike as untimely, asserting that the majority of said document constitutes an unauthorized surreply to the Defendants' reply to the Plaintiff's Opposition to the Defendants' Motion for Summary Judgment. On January 9, 2004, the Defendants filed a timely reply to the Plaintiff's summary judgment Opposition, along with the above-addressed Motion to Strike Plaintiff's Opposition as untimely. On January 23, 2004, the Plaintiff filed a document entitled "Opposition to Defendants' Motion to Strike." The first paragraph of that document addressed the Defendants' assertion that the Plaintiff's Opposition to summary judgment was not timely filed. However, the document's remaining seven pages, and four accompanying exhibits, are comprised solely of additional argument by the Plaintiff in rebuttal to the Defendants' reply to the Plaintiff's summary judgment opposition. Thus, the additional seven pages and four exhibits constitute a surreply.

Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed. *See* Local Rule 105.2(a). The seven pages of the Plaintiff's "Opposition to Defendants' Motion to Strike," and accompanying exhibits, which plainly are offered to rebut Defendants' reply memorandum, constitute a surreply. Given that the Plaintiff failed to seek leave of court, the surreply will not be considered by this Court. *See, e.g., Hall v. Prince George's County,* 189 F.Supp.2d 320, 321 n. 1 (D.Md.2002); *Hogue v. Sam's Club,* 114 F.Supp.2d 389, 391 n. 1 (D.Md.2000). Accordingly, the Defendants' Motion to Strike Plaintiff's Surreply is GRANTED.

*C. Defendants' Motion for Summary Judgment*

The Plaintiff's five-count Complaint is one for "wrongful termination and age discrimination." (Complaint, ¶ 3.) Count I alleges "wrongful discharge" under the "Personnel Law of Baltimore County, the law of the State of Maryland, and the Constitution of the United States."(Complaint, ¶ 31.) Count II avers that the "defendants withheld documents that would prove that the plaintiff was illegally terminated from his county position," thereby denying the Plaintiff's "due process rights under Article 24 of the Maryland Declaration of Rights." (Complaint, ¶¶ 34–35.) Count III alleges a civil conspiracy regarding the Plaintiff's alleged wrongful termination against Defendants Homan and O'Neill under the Fourteenth Amendment. (Complaint, ¶¶ 37–38.) Count IV contends that Defendant Sharbaugh aided and abetted Defendant Homan and Defendant O'Neill in the alleged wrongful termination. (Complaint, ¶ 40.) Finally, Count V asserts a claim for age discrimination pursuant to the Fourteenth Amendment. (Complaint, ¶¶ 42–43.)

The Plaintiff's Complaint simply is an attack on the local legislative enactment of a budget that eliminated his position. In analyzing the Plaintiff's attack, this Court initially notes that the Defendant County is a "home rule" county, having adopted a charter pursuant to Article XI–A of the Maryland Constitution.[7] Article XI–A's "purpose was to transfer the General Assembly's power to enact many types of . . . public local laws to the Art. XI–A home rule" jurisdictions. *McCrory Corp. v. Fowler,* 319 Md. 12, 16, 570 A.2d 834, 835–

7. "The theory behind the principle of home rule is that the closer those who make and execute the laws are to the citizens they represent, the better are those citizens represented and governed in accordance with demo-

cratic ideals." *Ritchmount Partnership v. Board of Supervisors of Elections,* 283 Md. 48, 56, 388 A.2d 523, 529 (1978) (citation omitted).

836 (1990). Under Article XI–A, section 1, it is appropriate for a home rule county's charter to contain a "system for budgeting and appropriating revenues." *Annapolis v. Anne Arundel County*, 347 Md. 1, 15, 698 A.2d 523, 530 (1997); *see also Board v. Smallwood*, 327 Md. 220, 241, 608 A.2d 1222, 1232 (1992) (holding that the budgetary and appropriation system "is a fundamental aspect of the form and structure of" a home rule county's government). Article VII of the County's Charter details the County's budgetary and fiscal procedures, including submission of the budget by the County Executive and approval of the budget by the County Council.

"[J]ob elimination through the budgetary process is a legislative act to which the doctrine of absolute legislative immunity is squarely applicable." *Drayton v. Mayor & Council of Rockville*, 699 F.Supp. 1155, 1156 (D.Md.1988), *aff'd without opinion*, 885 F.2d 864, 1989 WL 106865 (4th Cir. 1989) (citation omitted). Absolute legislative immunity protects "public [officials] acting within the general scope of [their] authority from tort liability for an act or omission involving the exercise of a ... legislative function." Restatement (Second) of Torts, § 895D(2) (1979).

The Supreme Court addressed the doctrine of absolute legislative immunity in *Bogan v. Scott–Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998), a case dealing with the elimination of a city administrator's job as part of a budget reduction effort. In that case, plaintiff-employee brought suit under 42 U.S.C. § 1983 against her former employer, the city of Fall River, Massachusetts, the city's Mayor, and several other city officials, alleging that her position was eliminated due to racial animus and in retaliation for exercising her First Amendment rights. *Id.* at 46–47, 118 S.Ct. 966. In reversing a jury verdict in favor of the plaintiff, the Court held that local legislators are immune from

§ 1983 suits under absolute legislative immunity. *Id.* at 52, 56, 118 S.Ct. 966. In so holding, the Court initially noted that "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Id.* at 54, 118 S.Ct. 966 (internal quotation omitted). Accordingly, the Court found that the town's Mayor, who had prepared and submitted the budget that eliminated the plaintiff's job following its legislative enactment, was entitled to legislative immunity because his actions were "integral steps in the legislative process." *Id.* at 55, 118 S.Ct. 966.

Prior to the Court's analysis in *Bogan v. Scott–Harris, supra,* Judge Smalkin of this Court, in *Drayton v. Mayor and Council of Rockville, supra,* addressed the doctrine of absolute legislative immunity under a factual scenario identical to the instant case. In *Drayton,* the Mayor and City Council of Rockville (the "City") enacted, through the City's budgetary process, a reorganization plan that eliminated several employment positions, including the plaintiff's. *Id.* at 1156. In response, the plaintiff brought forth claims of breach of contract, race and age discrimination, and conspiracy against the City. *Id.* In granting summary judgment to the defendant on the basis of absolute legislative immunity, Judge Smalkin noted that the Fourth Circuit extended such immunity to both state and local lawmakers. *Id.* (discussing *Schlitz v. Commonwealth of Virginia,* 854 F.2d 43, 46 (4th Cir.1988) (absolute immunity for state legislators) and *Bruce v. Riddle,* 631 F.2d 272, 279 (4th Cir.1980) (absolute immunity for municipal legislators)). Judge Smalkin found there to "be no question that, because this species of immunity is absolute, plaintiff's allegations concerning the alleged discriminatory motives behind the legislative actions are irrelevant." *Id.* (citation omitted).

■ Plainly, the instant Plaintiff faces the same barrier under the doctrine of absolute legislative immunity that the plaintiffs in *Bogan* and *Drayton* confronted. Like the situations in *Bogan* and *Drayton*, the elimination of the Plaintiff's job resulted from a reorganization plan enacted by the local legislature as part of the budgetary process. Thus, the reason behind the elimination of the Plaintiff's job "is not to be inquired into by the courts." *Drayton*, 699 F.Supp. at 1157; *Bogan*, 523 U.S. at 52, 118 S.Ct. 966 ("Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability."). Accordingly, as all of the Plaintiff's allegations are inextricably tied to the legislative act of the County in eliminating his position, his claims fail because they are barred under absolute legislative immunity. *See Bogan v. Scott–Harris*, 523 U.S. at 55–56, 118 S.Ct. 966; *Drayton*, 699 F.Supp. at 1157.

■ Moreover, even assuming, *arguendo*, that absolute legislative immunity is not applicable to the case at bar, the Plaintiff's claims fail on the merits. The main thrust of the Plaintiff's Complaint is that he was not afforded due process protection under federal (i.e., the Fourteenth Amendment) and state (i.e., Article 24) law.[8] In order to state an underlying due process violation, "plaintiffs must have a constitutionally cognizable property interest in their continued employment with [the particular government unit]." *Christian v. Cecil County*, 817 F.Supp. 1279, 1283

(D.Md.1993). The Plaintiff, as a County "merit" employee, had a protected property interest in his job. *See Linton v. Frederick County Board of County Commissioners*, 964 F.2d 1436, 1438–39 (4th Cir. 1992). However, when an employee's job "is eliminated because of legitimate governmental reorganization or budgetary cutbacks," that employee is not entitled to due process protection "because a hearing concerning the employee's job performance would not be relevant to the Defendants' decision to abolish [the] job." *Christian*, 817 F.Supp. at 1284 (citation omitted). Thus, because it is clear that the elimination of the Plaintiff's position resulted from a legitimate governmental reorganization, the Plaintiff was not entitled to due process protection. *Id.*

Nevertheless, the County did provide the Plaintiff procedural due process under the law regarding the abolishment of his job. Indeed, it is undisputed that the Plaintiff received timely oral notification of the abolishment from Defendant O'Neill, invoked his grievance rights within the County system, and participated in two County administrative hearings regarding his grievance, one of which was a full adversarial proceeding before the County Personnel and Salary Advisory Board. Thus, the County afforded the Plaintiff procedural due process not mandated by federal law. *See Linton*, 964 F.2d at 1439 (adopting, in the context of an employee being terminated for cause, the notion that fulfillment of due process occurs when oral or written notice of the charges against the

8. "Because Maryland courts have interpreted [Article 24] consistently with the Fourteenth Amendment Due Process Clause," the Plaintiff's Article 24 claim can be resolved concurrently through an exercise of supplemental jurisdiction by this Court. *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1438 n. 3 (4th Cir.1992) (citing *Department of Transp. v. Armacost*, 299 Md. 392, 474

A.2d 191, 202 (Md.1984) ("The due process clauses of Article 24 of the Maryland Declaration of Rights and the fourteenth amendment to the federal constitution have the same meaning; and we have said that Supreme Court interpretations of the federal provision are authority for interpretation of Article 24.")).

employee is presented, an explanation of the employer's evidence is presented, and an opportunity is provided for the employee to present his side of the story).[9]

Dwonzyk's age discrimination claim under the Fourteenth Amendment in count V similarly fails on the merits.[10] As noted above, Dwonzyk is unable to sustain any claim based upon an allegation of lack of due process under the Fourteenth Amendment. Viewing the facts and reasonable inferences therefrom in the light most favorable to Dwonzyk, this Court will assume, *arguendo,* that count V also is an attempt to lodge a claim under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 *et seq.*[11] Nonetheless, Dwonzyk also cannot establish a viable claim under the ADEA.

■ In order to establish a claim under the ADEA, a plaintiff must show that "but for the employer's motive to discriminate against plaintiff on the basis of age," the discriminatory action would not have occurred. *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992). Specifically, a *prima facie* case of a discriminatory failure to be hired under the ADEA requires a plaintiff to show that: (1) he is a member of the protected class, *i.e.,* at least 40 years old; (2) he was qualified for a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) the position remained open and the employer continued to seek or accept applications from persons

with his qualifications outside the protected class. *Henson v. Liggett Group, Inc.,* 61 F.3d 270, 274 (4th Cir.1995) (citations omitted).

Dwonzyk has not brought forth more than a mere scintilla of evidence to support an age discrimination claim. In count V, he contends that the "defendants retained Baltimore County employees whose positions were deleted from the budget who were younger than the plaintiff." (Complaint, ¶ 43.) To bolster this age discrimination allegation, the Plaintiff's Opposition memorandum states the following:

> Out of the five (5) employees whom (sic) positions were terminated, two (2) employees were retained and promoted by the defendants. These two (2) employees are younger than the plaintiff. One was laid-off then rehired (Cynthia Gillon), she is also younger than the plaintiff. Another was allowed to retire (Anne Lyon). (Pl.['s] Opp'n. Mem. at 4.)

The Plaintiff does not reference any affidavit, exhibit, or other document before this Court in support of his above allegations.

■ A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Affidavits and exhibits indicate that the Plaintiff applied for only one of the five new positions created by the reorganiza-

---

**9.** Without an underlying due process violation to sustain counts I, II, III, and V of his Complaint, count IV also would fail as a matter of law because in Maryland a viable claim of "aiding and abetting" requires the existence of underlying unlawful activity. *Alleco Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.,* 340 Md. 176, 200–201, 665 A.2d 1038, 1050 (1995).

**10.** To the extent that Dwonzyk is attempting to aver that the abolishment of his position

was because of his age, his claim is barred under the doctrine of absolute legislative immunity. *See* Discussion, *supra.*

**11.** Such a supposition, of course, initially hinges on the Plaintiff having exhausted his administrative remedies as required under the ADEA. *See* 29 U.S.C. §§ 633a(b) and (c). No evidence of administrative remedy exhaustion currently exists.

tion. Other individuals whose positions were abolished applied for more than one of the new positions. Furthermore, John Jolley, a 63–year old male with thirty-four years of experience, was judged to be the best candidate for the one new position sought by the Plaintiff. Such evidence presented by the Defendants successfully shifts the onus onto the Plaintiff to come forward and demonstrate that a genuine issue for trial concerning his age discrimination claim exists. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

Dwonzyk, however, has not produced any specific facts showing that there is an issue of age discrimination. At most, his Opposition merely gilds his initial pleading by referencing the names of two individuals, Cynthia Gillon and Anne Lyon, who were re-hired following the legislative abolishment of their positions. According to Dwonzyk's bald assertion, these two employees were "younger" than the Plaintiff. Yet, he does not point to any specific evidence that indicates the particular ages of Ms. Gillon and Ms. Lyon or that describes the circumstances behind their re-hiring. Quite simply, Dwonzyk's unsubstantiated allegations and bald assertions are insufficient to overcome the Defendants' motion for summary judgment. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir.1996); *see also Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988) (stating that plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact").[12]

For all of the above reasons, the Plaintiff's five-count Complaint, which is predicated upon his opinion that the abolishment of his position was unlawful, must be dismissed as a matter of law. Therefore, the Defendants' Motion for Summary Judgment is GRANTED.

### CONCLUSION

Based upon the foregoing reasons, an Order will be entered separately DENYING the Defendants' Motion to Strike the Plaintiff's Opposition, GRANTING the Defendants' Motion to Strike the Plaintiff's surreply, and GRANTING the Defendants' Motion for Summary Judgment, and ENTERING JUDGMENT in their favor, against the Plaintiff.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is this 29th day of June 2004, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That the Defendants' Motion to Strike the Plaintiff's Opposition (Paper 13) is DENIED;

2. That the Defendants' Motion to Strike the Plaintiff's Surreply (Paper 18) is GRANTED;

3. That the Defendants' Motion for Summary Judgment (Paper 5) BE, and the same hereby IS, GRANTED; and

4. That judgment BE, and the same hereby IS, ENTERED in favor of the Defendants, and against the Plaintiff.

---

12. This Court also notes that the Plaintiff would not be able to establish a prima facie case under the ADEA concerning the sole reorganization position for which he applied, a Personnel Analyst III post, because it is undisputed that the County filled that position with a person from within the Plaintiff's protected class, 63 year old John Jolley. *See Henson v. Liggett Group, Inc.,* 61 F.3d at 274.